**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

United States

   v.                                        Case No. 17-cr-157-PB
                                         Opinion No. 2018 DNH 114

Kurt Carpentino

**MEMORANDUM AND ORDER**

    Kurt Carpentino was questioned twice while in custody at the Westminster, Vermont State Police barracks on April 27, 2017. In this Memorandum and Order I address Carpentino's attempt to suppress the fruits of his second interview.

### I.    BACKGROUND

    On April 27, 2017, Carol Pino called the Hinsdale, New Hampshire Police Department to report that her fourteen-year-old daughter, M.H., was missing.[1] Pino suspected that Carpentino, her landlord, may have taken M.H. to another one of his properties in Vermont. After an investigation, Carpentino was arrested and taken to the State Police barracks in Westminster, Vermont.

    At the barracks, Carpentino waived his Miranda rights and

---

[1] Both parties agree on all facts except where specifically noted. These are the same facts that I found orally after the May 29, 2018 hearing on Carpentino's motion to suppress.

agreed to be interviewed. He maintained his innocence during the interview, but invoked his right to counsel after the investigating detectives challenged his version of what had transpired. This prompted the detectives to end the interview and Carpentino was then returned to a holding cell.

Approximately 40 minutes later, Carpentino waived at a camera in his cell several times to get a guard's attention and asked the guard, "hey are the detectives still here?" The officer replied, "yeah" and the defendant responded, "can I speak with them?" Carpentino was then returned to the interview room and the following conversation ensued, all of which was recorded.

| | |
|---|---|
| **OFFICER 2**: | I'll get you another glass, and then we have to re-Mirandize you because we brought you back in. |
| **CARPENTINO**: | How much, would, uhm, the maximum time be for something like this? |
| **OFFICER 1**: | I'd have to look. You know, I don't…. I know a lot, but I don't know a lot of details, so I'm not sure. |
| **CARPENTINO**: | Alright. Uhm… |
| **OFFICER 1**: | Let me just get past this first, the administrative part. So I'm just, because we gotta go over these again. You've come to us saying "Hey, I want to talk to you again." Correct? |
| **CARPENTINO**: | Yeah, because, uhm, one of the things that the officer said that, uhm…once I was done talking with you was that if was up to you if I could have a phone call to my lawyer. |
| **OFFICER 1**: | Well is that what you're looking for, is a phone call to your lawyer or do you want to talk to us again? |
| **CARPENTINO**: | Uhm, I kinda need a phone call to my lawyer, too. I need to let somebody know that I'm here. |

2

| | |
|---|---|
| **OFFICER 2:** | Here you go Kurt. |
| **CARPENTINO:** | Thank you. |
| **OFFICER 1:** | I mean, if you want to talk to an attorney, then I can't talk to you. We can't talk to you. |
| **CARPENTINO:** | Alright. |
| **OFFICER 1:** | My understanding is that you indicated to somebody that you wanted to speak to us again. |
| **OFFICER 2:** | Is that true, or…? |
| **OFFICER 1:** | Is that what you wanna do or do you want to talk to an attorney? |
| **CARPENTINO:** | I don't know. Just… I fucked myself. |
| **OFFICER 2:** | Well, you know us. We're just looking for the truth. That's all we're looking for. |
| **CARPENTINO:** | Yeah. |
| | (Long pause) |
| **CARPENTINO:** | I should probably start from the beginning. |
| **OFFICER 2:** | Yeah, yeah, but we gotta get through the Miranda first. |
| **OFFICER 1:** | And Kurt, I have to make sure that we're clear on this. You want to talk to us. |
| **CARPENTINO:** | Yeah. |
| **OFFICER 1:** | Okay. To do that, I have to re- go through that whole Miranda thing again. And if you want me to, I will. You made mention about calling a lawyer. If that's what you want, then we can do that, too. But I can't do both. I can do one or the other. |
| **CARPENTINO:** | I can talk with you with a lawyer, right? |
| **OFFICER 1:** | You can, but usually that doesn't happen. |
| **CARPENTINO:** | Okay. |
| **OFFICER 1:** | But it's up to you. I just want you, I want to be clear with you. I don't want… |
| **OFFICER 2:** | Make sure that it's clear that it's your choice. |
| **OFFICER 1:** | Yeah, you don't have to talk to us. |
| **OFFICER 2:** | You're in control here, well, I mean as far as… |
| **OFFICER 1:** | As far as talking to us. |
| **OFFICER 2:** | Right. |
| **CARPENTINO:** | Yeah. I'll talk. |
| **OFFICER 1:** | You'll talk to us. |
| **CARPENTINO:** | I'll talk. |
| **OFFICER 1:** | Ok. I'm going to go through these again for you. You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer |

|              |              |
|---|---|
|              | before questioning and have a lawyer present with you during any questioning. If you cannot afford to hire a lawyer, one will be appointed to represent you at public expense before any questioning, if you wish. In Vermont, that's called a public defender. If you decide to answer questions, you can stop the questioning at any time. Do you understand each of these rights I've explained to you? |
| **CARPENTINO:** | Yes. |
| **OFFICER 1:** | Do you want to talk to me now? |
| **CARPENTINO:** | Fuck. I don't know. I'm scared. I don't know what's going on. Yeah, I'll talk. I just… I don't know how long, like, I'd be stuck here. Like, is there like an arraignment or something? |
| **OFFICER 1:** | Yeah. I'll explain all that. That's no big deal. Can I just get through this? |
| **CARPENTINO:** | Am I ready to talk to you, right? |
| **OFFICER 2:** | What's that? |
| **CARPENTINO:** | We're at "am I ready to talk…", "am I willing to talk to you?" |
| **OFFICER 2:** | Yeah. |
| **OFFICER 1:** | Mmm Hmm. Yes. I'm going to read you the waiver again. It says "I have been advised that I have the right to remain silent, to be represented by a lawyer and to talk with one prior to questioning and to have one present during questioning. Knowing my rights, I agree to waive them and talk to you now. No threats or promises have been made to me." Do you understand all that? |
| **CARPENTINO:** | I understand. |
| **OFFICER 1:** | What time you got? This is the same thing I read to you before. If you agree to it, feel free to read it. |
| **OFFICER 2:** | You have nice penmanship. |
| **CARPENTINO:** | Thanks. |

After waiving his <u>Miranda</u> rights, Carpentino gave a lengthy interview and ultimately confessed to bringing M.H. to Vermont to have sex with her.

4

## II. ANALYSIS

Carpentino presents three arguments to support his motion to suppress the fruits of his second interview. He first argues that the interview should never have occurred because he invoked his right to counsel at the end of the first interview and he did not thereafter initiate further communication with the detectives. Next, he claims that the interview was improper even if he initiated further communication because he invoked his right to counsel again shortly after he was returned to the interview room. Finally, he argues that the interview was improper because he did not make a knowing, voluntary, and intelligent waiver of his Miranda rights. I address each argument in turn.

### A. Did Carpentino Initiate Further Communications With the Detectives After He Invoked His Right to Counsel?

If a suspect in custody invokes his right to counsel, he may not be subjected to further questioning without counsel unless "the accused himself initiates further communications, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 485 (1981). The purpose of this rule is to prevent an accused who has invoked his right to counsel from being badgered by the police into waiving this important right after it has been invoked. Maryland v Shatzer, 559 U.S. 98, 106 (2010).

Carpentino does not deny that the second interview happened because he asked to speak with detectives. He nevertheless argues that he did not initiate further communication with them in a manner that was sufficient to satisfy Edwards because he asked to speak with them for the limited purpose of attempting to arrange a phone call with his attorney. I reject this argument because Carpentino's claim cannot be squared with what actually happened.

Carpentino did not demand to speak with a lawyer when he was brought into the interview room. Instead, he first asked the detectives, "[h]ow much, would, uhm, the maximum time be for something like this?" Although he later told the detectives that he wanted to arrange a phone call with his attorney "to let somebody know that I'm here," he did so in response to the question, "well is that what you're looking for, is a phone call to your lawyer, or do you want to talk with us again?" His full response, which began with the statement, "uhm, I kinda need a phone call to my lawyer too" (emphasis added) clearly signaled his desire to both speak with the detectives and to arrange a telephone call with his attorney for a purpose unrelated to the proposed interview. Any reasonable person viewing these statements together would conclude that Carpentino was intending to engage in general conversation with the detectives when he asked to speak with them, rather than to merely arrange a phone

6

call with his attorney.

Because the detectives could reasonably conclude from Carpentino's statements that he was seeking to engage them in communication on matters other than to merely seek to arrange a phone call with his attorney, they were justified in questioning him further to see if he was again willing to waive his Miranda rights. See generally, Oregon v. Bradshaw, 462 U.S. 1039, 1043-1044 (1983) (plurality)("well, what is going to happen to me now?" sufficient to initiate communication); United States v. Thongsophaporn, 503 F.3d 51, 56 (1st Cir. 2007)("what is going on?" same); United States v. Fontana, 948 F.2d 796, 806 (1st Cir. 1991)("what's going to happen to me?" same).

## B.  Did Carpentino Invoke His Right to Counsel During the Second Interview?

Carpentino next argues that the detectives were barred from questioning him during the second interview even if he initiated communication with them because he invoked his right to counsel at the beginning of the interview.

To enjoy the protections of the Fifth Amendment right to counsel, a defendant must clearly and unambiguously invoke the right. United States v. Dudley, 804 F.3d 506, 512 (1st Cir. 2015) (citing Davis v. United States, 512 U.S. 452, 459 (1994)). Examples of cases in which this rigorous standard has not been met abound. See, e.g., United States v. Sweeney, 887 F.3d 529,

534, 536 (1st Cir. 2018) ("I'm trying to keep myself . . . I don't want to dig a hole.  I need to speak to a lawyer. . . . Do I need a lawyer?"); United States v. Dudley, 804 F.3d at 512 ("call Gordon to get ahold of Joseph about the – about getting a lawyer"); United States v. Oquendo-Rivas, 750 F.3d 12, 19 (1st Cir. 2014) ("I do not understand this, my lawyer speaks"). Obershaw v. Lanman, 453 F.3d 56, 65 (1st Cir. 2006).  Moreover, even an unambiguous request for counsel does not prevent the police from seeking clarification if it is unclear whether the suspect is seeking "the assistance of an attorney in dealing with the forthcoming interrogation."  Grant-Chase v. Comm'r New Hampshire Dep't of Corrections, 145 F.3d 431, 436 (1st Cir. 1998); see also United States v. Jardina, 747 F.2d 945, 949 (5th Cir. 1984) (request for attorney to work out a cooperation agreement not an invocation of right to counsel); Wayne R. LaFave, Criminal Procedure § 6.9(g)(4th ed.) ("An indication by the defendant that he will only want counsel at some future time or for some other purpose is not an assertion of the right to counsel for Miranda purposes.").

    Carpentino claims that he invoked his right to counsel when he told the detectives that he needed to place a phone call to his attorney to "let someone know I'm here."  This statement, however, does not suggest either that Carpentino wanted to have an attorney present during questioning or that he had made a

8

decision to speak to the detectives through counsel. Instead, it merely expresses Carpentino's desire to contact his counsel so that he could let someone know where he was. Any concern that Carpentino might have meant something different was dispelled when the questioning that followed left no doubt that Carpentino was willing to speak with the detectives without an attorney. Accordingly, I reject Carpentino's argument that he invoked his right to counsel during the second interview.

## C. Did Carpentino Knowingly, Intelligently, and Voluntarily Waive his Miranda Rights?

Carpentino's final claim is that the statements he made during his second interview must be suppressed because he did not execute a knowing, intelligent, and voluntary waiver of his Miranda rights. His principal argument is that his Miranda waiver is invalid because the detectives left him with the mistaken impression that he would not be allowed to submit to a later interview with counsel present if he invoked his right to counsel.

Carpentino rests this argument primarily on the detective's statement to Carpentino that he could either invoke his right to counsel or he could speak to detectives, but he could not do both. This argument, however, fails to properly account for the question and clarifying answer that followed the detective's statement. Carpentino asked, "I can talk with you with a

9

lawyer, right?" and a detective answered, "[y]ou can, but usually that doesn't happen." At no point following that exchange did Carpentino express any interest in contacting his lawyer. Instead, he repeatedly stated that he wanted to proceed with the interview without counsel and affirmatively waived his Miranda rights. Under these circumstances, I find no support in the record for Carpentino's claim that he did not knowingly, intelligently, and voluntarily waive his Miranda rights.

### III. CONCLUSION

For the reasons stated in this Memorandum and Order, I deny defendant Carpentino's motion to suppress the statements he made during his second interview. Doc. 17 (original motion to suppress); Doc. 62 (supplemental motion to suppress).

SO ORDERED.

/s/Paul Barbadoro_____
Paul Barbadoro
United States District Judge

June 8, 2018

cc: Seth R. Aframe, Esq.
    Georgiana L. Konesky, Esq.
    Jonathan R. Saxe, Esq.
    Dorothy E. Graham, Esq.

10