*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO FEBRUARY 7, 2019

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * *
                                *
UNITED STATES OF AMERICA        *
                                *
           v.                   *  1:17-cr-157-PB
                                *  October 1, 2018
KURT CARPENTINO                 *  10:20 a.m.
                                *
* * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE PAUL J. BARBADORO

Appearances:


For the Government:        Georgiana L. Konesky, AUSA
                           Seth R. Aframe, AUSA
                           United States Attorney's Office


For the Defendant:         Dorothy E. Graham, Esq.
                           Jonathan R. Saxe, Esq.
                           Federal Defender's Office



Probation Officer:         Sean Buckley



Court Reporter:            Liza W. Dubois, RMR, CRR
                           Official Court Reporter
                           United States District Court
                           55 Pleasant Street
                           Concord, New Hampshire 03301
                           (603)225-1442

<pre>
 1                    P R O C E E D I N G S

 2            THE CLERK:  Court is in session and has for

 3   consideration a sentencing hearing in the United States

 4   of America versus Kurt Carpentino, criminal case number

 5   17-cr-157-1-PB.

 6            THE COURT:  Mr. Carpentino, the -- the report

 7   I have for you was prepared originally on August 8th and

 8   it was revised on September 5th.  Have you seen that

 9   report?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  Have you read it and discussed it

12   with your attorney?

13            THE DEFENDANT:  I have, your Honor.

14            THE COURT:  All right.  Thank you.  You can be

15   seated.

16            Does the government dispute any of the facts

17   or legal conclusions contained in the report?

18            MR. AFRAME:  As we lay out in our sentencing

19   memorandum, we don't agree with the report, but we agree

20   with the defense on what the guideline range should be.

21            THE COURT:  I -- you know, I -- my clerk gave

22   me your report and for some reason I did not see it and

23   I thought you had not answered the defendant's --

24            MR. AFRAME:  We agree with it.

25            THE COURT:  So let me -- let me take a moment
</pre>

1  and read your report.

2            MR. AFRAME:  Yeah.

3            THE COURT:  I apologize.

4            All right.  So I have a case here where both

5  parties agree on the guideline -- well, let me -- are

6  you -- there are other objections you are not addressing

7  at all or do you --

8            MR. AFRAME:  As I understand the defense's

9  position, which I think aligns with ours, yes, they made

10  objections to the guideline range, but they also agree

11  that 4B1.5(a) supersedes all of that and sets the

12  guideline range.  And we all agree on that.

13            THE COURT:  Do you agree?

14            MS. GRAHAM:  Yes.

15            THE COURT:  Okay.  So do you want to press

16  your other objections or are you simply -- like a lot of

17  them are he testified to the contrary, so we object.

18  And of course he has a right to preserve all of that,

19  but I don't think you expect me to accept it, right?

20  Because I -- I don't believe that.  I believe your

21  client committed perjury in front of me.

22            So do we need to do more about that except as

23  to those objections note that they're preserved for

24  purposes of the record?

25            MS. GRAHAM:  Yes, thank you.

1          THE COURT:  Are there any other objections

2   that you need to take up, given this agreement that the

3   prosecutor and you have with respect to his ultimate

4   total guideline range?

5          MS. GRAHAM:  No, your Honor.

6          THE COURT:  Okay.  So if you want to say

7   anything in addition to what, you know, you've said in

8   your report -- I'm inclined to accept the government's

9   position that they aren't going to stand up and defend

10  the adjustment that you recommend because it requires

11  testimony and they're not going to bring the victim in.

12  And so they don't agree that that -- they agree that

13  that adjustment should not be given and then they

14  propose this alternative that trumps the other

15  considerations and produces a particular guideline

16  range.

17         Do you want to say anything about that?

18         THE PROBATION OFFICER:  No.  The only thing I

19  would say is that I understand where the parties are

20  coming from and I -- I -- I agree with them, but in

21  terms of -- in our role, it's difficult to determine the

22  veracity of her statement.  That's what she said to the

23  police officers.  So it's hard for us to make that

24  determination.  That's why we apply the guidelines the

25  way they are in the report.

1          THE COURT:  Yeah.  And I -- I'm not in any way

2     being critical.  I'm just saying if there's something

3     I'm missing that I shouldn't -- the government's

4     position is, Judge, you need evidence to do that, her

5     statement isn't enough evidence to do that, we would

6     have to bring her in, we don't want to bring her in, and

7     so you can't give that adjustment.

8          If I conclude that that proposition is

9     correct, that there isn't an evidentiary basis for it,

10    do you otherwise agree that the adjustment should be

11    made that the parties apparently agree on?

12         THE PROBATION OFFICER:  I believe that the

13    parties are correct.

14         THE COURT:  Okay.  All right.  So I'm going to

15    direct the probation officer to amend the presentence

16    report and why don't you summarize for the record

17    exactly what amendments you feel need to be made.

18         MR. AFRAME:  The report should reflect that

19    the -- that the base offense level should be determined

20    by 4B1.5, which would set a total offense level of 37

21    and a Criminal History Category V, which would field an

22    advisory guideline range of 324 to 405 months.

23         THE COURT:  Are there any other changes that

24    need to be made to the presentence report?

25         Can you give me that total range one more

1    time?

2           MR. AFRAME:  Yes.  324 to 405, which is a

3    level 37, category V.

4           THE COURT:  Okay.  Are there any other changes

5    to any of the paragraphs in the presentence report --

6           MR. AFRAME:  So --

7           THE COURT:  -- that need to be made?

8           MR. AFRAME:  -- the cross-reference should

9    be -- the cross-reference at 20 -- at paragraph 26,

10   there's a cross-reference.

11          THE COURT:  Uh-huh.

12          MR. AFRAME:  That should be stricken.

13          THE COURT:  All right.  So let's go through

14   the -- the offense level computation.

15          Is there any change that needs to be made to

16   paragraph 25?

17          MR. AFRAME:  I'm sorry.  I didn't hear which

18   paragraph you said.

19          THE COURT:  Paragraph 25.  I'm just going to

20   go through every paragraph --

21          MR. AFRAME:  Yeah.

22          THE COURT:  -- of the offense level --

23          MR. AFRAME:  If you would just let me open the

24   book, that will make this go better.

25          THE COURT:  Okay.

1          MR. AFRAME:  Okay.

2          THE COURT:  So that -- 25 just tells us what

3  manual is being used.  Do you agree that that's correct?

4          MR. AFRAME:  Yes.

5          THE COURT:  Right?

6          MR. AFRAME:  Yes.

7          THE COURT:  All right.  So let's then go to

8  paragraph 26.

9          Is there any change to the base offense level

10  that's required as reported in the existing report?

11          MR. AFRAME:  The base offense level should be

12  28 --

13          THE COURT:  Okay.

14          MR. AFRAME:  -- under -- and do you want the

15  reference to the --

16          THE COURT:  Yes, the reference, please.

17          MR. AFRAME:  2G1.1(a)(3).

18          THE COURT:  Okay.  Do you agree with that?

19          THE PROBATION OFFICER:  Yes, your Honor.

20          THE COURT:  Okay.  So that change will be

21  made.

22          Paragraph 27.

23          MR. AFRAME:  So I take it the Court is saying

24  that it has rejected the various arguments --

25          THE COURT:  To the extent he presents an

1  argument that requires me to believe his testimony and

2  to disbelieve the government's evidence, it's my firm

3  conviction that the defendant committed perjury in front

4  of me and that the government's evidence was credible.

5          So to the extent he has an objection based

6  solely on the fact that he gave contrary testimony, I

7  overrule his objection, note it for the record, and it's

8  preserved.

9          MR. AFRAME:  Okay.

10          THE COURT:  Therefore, we don't need to make

11  any change for that reason.

12          If there's any other reason why we need to

13  make a change, you need to tell me.

14          MR. AFRAME:  Okay.  So as to 27, I think it's

15  undisputed the victim was 14.  So that would apply.

16          THE COURT:  Okay.  28.

17          MR. AFRAME:  I think that at least the

18  government's position is a sex act occurred.  I know the

19  defendant disputes that because he denies the offense.

20          THE COURT:  Okay.  So you're -- I think what

21  you're telling me on that is just because you deny the

22  offense that that -- in other words, have I already made

23  the ruling I need to make --

24          MS. GRAHAM:  Yes.

25          THE COURT:  -- to keep the report as it is on

1    that?

2              Okay.  And the paragraph 29, any change on

3    that?

4              MR. AFRAME:  No.

5              THE COURT:  No.  30?

6              MR. AFRAME:  No.

7              THE COURT:  31.

8              MR. AFRAME:  That's the one where you've

9    overruled the objection.

10             THE COURT:  Okay.  32.

11             MR. AFRAME:  So if we add 28 and 6, we come up

12   with 34 instead of 38.

13             THE COURT:  All right.  And that should be 34

14   rather than 38.

15             Does the probation officer agree?

16             THE PROBATION OFFICER:  32?

17             THE COURT:  Yes.  He said 26 should be --

18             MR. AFRAME:  28.

19             THE COURT:  -- 28.  And instead of --

20             THE PROBATION OFFICER:  Yup, sorry.

21             THE COURT:  34 is 32.  Okay.

22             33, paragraph 33.

23             MR. AFRAME:  So this is where we come to

24   the -- the cross-reference --

25             THE COURT:  Okay.

1          MR. AFRAME:  -- which -- which results in a

2    37.

3          THE COURT:  Okay.  And could you explain to me

4    why it is that I make that particular --

5          MR. AFRAME:  So if you go to -- turn our book

6    to 4B1.5 --

7          THE COURT:  Okay.

8          MR. AFRAME:  -- (a), in any case in which the

9    defendant's instant offense of conviction is a covered

10   sex crime, which it is, and the defendant committed the

11   instant offense of conviction subsequently to sustaining

12   at least one sex offense conviction, which he has for

13   the New Hampshire convictions, the offense shall be the

14   greater of either the math we just did which got us to

15   32 or, (b), the offense level from the table below, the

16   stat max is life.  So we're at a 37.

17         THE COURT:  Okay.  All right.

18         MR. AFRAME:  And if you go to the 2, it

19   says the criminal history should be a V in this

20   circumstance.

21         THE COURT:  So 37 -- and paragraph 34, no

22   change.

23         MR. AFRAME:  34 would be no change.

24         THE COURT:  And 35.

25         MR. AFRAME:  Would be a 37.

```
1              THE COURT:  37.

2              All right.  And how about changes to his

3    criminal history?

4              MR. AFRAME:  I just want to see what the

5    bottom line here was.

6              So I --

7              THE COURT:  Does he remain a Criminal History

8    Category V with no changes to his --

9              MR. AFRAME:  I'm just adding up the --

10   three -- can I ask the probation officer how it came

11   to --

12             THE PROBATION OFFICER:  He still remains a V,

13   because we're applying 4B1.5.  4B1.5(a)(2), criminal

14   history category shall be the greater of the criminal

15   history category determined under Chapter Four or

16   Criminal History Category V.

17             THE COURT:  So he automatically gets bumped up

18   to a V regardless?

19             THE PROBATION OFFICER:  Correct.

20             MR. AFRAME:  I'm sorry.  Score 6, not category

21   VI.  I understand.  Yes, he's a category V.

22             THE PROBATION OFFICER:  All right.

23             THE COURT:  All right.  Does the defense agree

24   with those proposed changes --

25             MS. GRAHAM:  Yes.
```

1          THE COURT:  -- subject -- preserving your

2    objections to matters that you've raised in your memo

3    that I've overruled you on.

4          MS. GRAHAM:  Yes.

5          THE COURT:  All right.  So I am going to

6    direct the probation officer to make those proposed

7    changes and amend his report.

8          THE PROBATION OFFICER:  Do you also want me to

9    change paragraph 66 to reflect the total offense level

10   and the guideline range?

11         THE COURT:  Okay.  Everybody in -- understand

12   and agree?

13         MS. GRAHAM:  Yes.

14         THE PROBATION OFFICER:  As well as paragraph

15   74 to reflect the new fine range?

16         THE COURT:  All right.  Anybody in

17   disagreement?

18         MS. GRAHAM:  No.

19         MR. AFRAME:  No.

20         THE COURT:  No?  Okay.  So I adopt the -- I

21   direct the probation officer to prepared an amended

22   report consistent with these directions and I adopt the

23   findings of fact and conclusions of law set forth in the

24   amended report which will be made a part of the record

25   under seal.

1        I determine that the defendant's total offense

2   level is 37.  His criminal history category is V.  The

3   guideline sentencing range is 324 to 405 months.

4        The defendant's objections, to the extent that

5   they've been presented and raised with me, are overruled

6   and preserved for purposes of appeal.

7        Anybody need to be heard on guideline

8   sentencing range issues before we get into requests for

9   an ultimate sentence here?

10        MS. GRAHAM:  No.

11        THE COURT:  Okay.

12        MR. AFRAME:  I did want to talk about one

13   thing, and I'm not sure it's a guideline issue or PSR

14   issue, but there's a mandatory $5,000 special assessment

15   in these kind of cases that can be waived only if the

16   defendant doesn't have the financial wherewithal.

17        I think the Probation Department determined

18   that he did not have the financial wherewithal, but he

19   does own property outright --

20        THE COURT:  Yeah.

21        MR. AFRAME:  -- that would have value.  So

22   we're not sure that's right and I don't know the right

23   time to bring that up.

24        THE COURT:  All right.  Let's -- let's work on

25   the prison sentence first because there are also some

1    conditions of supervised release that we need to

2    address.

3              MR. AFRAME:  Uh-huh.

4              THE COURT:  So let's address the fine and --

5    and special assessment and supervised release conditions

6    after determining the sentence, because that's obviously

7    what is of greatest concern to everybody in the room.

8              MR. AFRAME:  Yeah.

9              THE COURT:  All right?

10              MR. AFRAME:  Yes.

11              THE COURT:  So if no one wants to be heard on

12    guideline issues, your position is given the guideline

13    sentencing range I have determined, I should sentence

14    him at the bottom of that range, right?

15              MS. GRAHAM:  Yes, your Honor.

16              THE COURT:  All right.  And you asked for a

17    sentence at the top of the range.

18              MR. AFRAME:  Correct.

19              THE COURT:  Why don't you make your case.

20    I'll hear the defendant's response.

21              MR. AFRAME:  Okay.  So we are in agreement

22    that a guideline sentence is appropriate, but we think

23    within that range that the high end of that range is

24    appropriate.

25              We focus on, really, three of the

1  considerations that go into any Court's sentencing

2  calculus.  We think an important one here is

3  incapacitation of the defendant.  The defendant served

4  a -- already has served a long sentence for sex crimes

5  against underage people.  He got out of jail and either

6  before he got out of jail or immediately thereafter

7  began what we think was setting up that next sex crime

8  with a minor.

9         He did so in a way that I think came out

10  through the trial was highly manipulative.  He -- the

11  Court saw --

12         THE COURT:  Well, this is an especially

13  emotionally and intellectually vulnerable young woman.

14         MR. AFRAME:  Correct.

15         THE COURT:  She -- she -- there's no question

16  that he took advantage of those vulnerabilities.

17         MR. AFRAME:  Correct.

18         THE COURT:  Obviously any minor child is

19  vulnerable, but she had special developmental problems

20  that made her unusually vulnerable to his exploitation.

21         MR. AFRAME:  And he manipulated the -- the

22  family, he manipulated the whole situation to get access

23  to the child and then manipulated the child, taking care

24  of those vulnerabilities.  We do think that, at least

25  within the range, that's an aggravating consideration.

1          We think that the nature of his prior crimes,

2    some of which, as we point out in our papers, were

3    violent can't be overlooked as we consider his potential

4    danger to the -- to the public if he's not sentenced to

5    jail for a very long time.

6          I would note that as far as punishment goes, I

7    think it's important -- the lack of remorse in this case

8    I think is something worthy of note.  The defendant not

9    only, the Court's already said, perjured himself here,

10   but his efforts to manipulate the victim on the back

11   side of the crime also show his danger because he wrote

12   her and tried to take advantage of what the Court's

13   noted are her weaknesses to try to get out of what he

14   did.

15         Now that, of course, exploded on him and I

16   think was one of the main reasons he was convicted, but

17   nevertheless it shows his mindset, which I think creates

18   a particular danger to the public based on his

19   willingness to do what it takes to commit the crime or

20   whatever it takes to get out of the crime.

21         Also --

22         THE COURT:  So her -- you would say her

23   potential -- her significant vulnerabilities that --

24   even apart from her age and his efforts to conceal the

25   crime after the fact are things that are not taken into

1    account in the guideline range determination itself and

2    are aggravating factors for a sentence within the range.

3           MR. AFRAME:  Right.  So we're within the

4    range, but I think in deciding where within the range,

5    we need to consider the -- the traditional sentencing

6    factors and I think one of them is dangerousness to the

7    community.  And someone who's willing to take advantage

8    of weak people, both before the crime, to commit the

9    crime, and then after the crime to cover up the crime

10   should make us think because of that dangerousness,

11   we're looking at the high end of the range.

12          THE COURT:  Okay.

13          MR. AFRAME:  As far as general deterrence --

14   you know, I guess I could talk to you about specific

15   deterrence, but I'm not sure that's going to matter

16   here, which is why I'm talking about incapacitation.

17   Because he served a 13-year state prison sentence, got

18   out of jail and is before this court months later.  So

19   to say that a 13-year prison -- a long prison sentence

20   is going to specifically deter him, I'm not so sure.

21          I know that the evidence on people aging out

22   of crimes is not always that persuasive, but I think

23   that here, after a long sentence, hopefully, the

24   defendant will be old enough that some of the obvious

25   interests he has will have abated.  But, you know, I

1    know that that's a -- that that's a difficult area.

2         THE COURT:  Yeah, there -- statistically, if

3    you look at crime in aggregate and age at which crimes

4    are committed, crime commission rates decline

5    substantially with age, but it's hard to draw specific

6    conclusions in an individual case about that.

7         Unfortunately, I've got a number of sex-type

8    crimes committed by people in their 70s, so --

9         MR. AFRAME:  Right.

10        THE COURT:  -- you have to be mindful of that

11   reality.

12        MR. AFRAME:  And I am.  I -- so that I do

13   recognize that's an area where people disagree.

14        As far as general deterrence, this is a --

15   this is a serious crime.  And I think -- again, I mean,

16   it's all the same -- the same constellation of

17   underlying facts exist, but they all point to we have to

18   send a message that this kind of sexual predator conduct

19   will not be tolerated, and certainly when someone has

20   already served a significant prison sentence.  And so a

21   longer prison sentence is necessary here.  Again, I'm

22   not sure so much for specific deterrence, but to show

23   the seriousness with which we treat these crimes.

24        So, again, the government's not seeking an

25   upward variance.  It's not seeking an upward departure.

1    But there are aggravating circumstances that when you

2    look at a range, this is a case that belongs near the

3    top or at the top of that range.

4              THE COURT:  All right.  Ms. Graham, what would

5    you like to say?  If you could, try to respond

6    specifically to his arguments that there are at least a

7    couple of factors here that have not really been taken

8    into account by the guideline determination.  I'm

9    interested in your thoughts about that.

10             MS. GRAHAM:  Yes, your Honor.

11             THE COURT:  And understanding -- I mean, you

12   maintain your client's innocence and preserve all of his

13   rights for appeal.  I respect that.  But in this

14   presentation, if you can sort of set that aside and

15   focus -- because I see it as a different kind of case --

16   try to persuade me that these aggravating factors that

17   he says aren't taken into account maybe are or shouldn't

18   be taken into account the way he suggests.

19             MS. GRAHAM:  Okay.

20             I think in first addressing his prior sexual

21   contact violations or convictions, number one, I would

22   ask the Court to consider that those allegations came

23   about, I believe, when he was roughly 18 years old.

24             The PSR has noted that he has struggled with

25   mental health issues himself, with --

1          THE COURT:  Yeah, can you help me on that?  He

2  makes references to hearing voices throughout his life.

3  Do we have any -- have you presented me with any

4  psychological reports or anything that can substantiate

5  that claim?

6          MS. GRAHAM:  I have not, your Honor.

7          THE COURT:  Okay.

8          MS. GRAHAM:  It -- I -- I think that certainly

9  he has exhibited being depressed throughout his life.

10  That's what he --

11          THE COURT:  Yeah.

12          MS. GRAHAM:  -- has stated to us.

13          But, no, I have not submitted --

14          THE COURT:  I just wondered.  If there were a

15  substantiated claim of substantial mental -- mental

16  illness, people hearing voices throughout their life, is

17  a symptom of potential substantial underlying mental

18  illness that has not previously been brought to my

19  attention in the form of other than his postconviction

20  claim to that effect.

21          So if there were evidence of that, now would

22  be the time to present it to me.  But, frankly, I can't

23  assess it in my mind as a very substantial factor

24  without some substantiation of it.

25          MS. GRAHAM:  Understood.

1          So, in addition, I think it's important to at

2    least put it in that context as to the prior

3    convictions, that he was approximately 18 years old and

4    he has spent the majority of his adult life --

5          THE COURT:  What sex offender treatment, if

6    any, did he receive while in prison?

7          MS. GRAHAM:  I believe he -- he attended

8    and completed the sex offender treatment program at

9    New Hampshire State Prison as well as other mental

10   health counseling.

11          During his -- his long prison sentence there,

12   he -- both of his parents passed away.  So clearly he

13   was taken out of society for a significant period of

14   time and lost his -- his right and his ability to be

15   with his family, obviously, during that period of time

16   and during their decline.

17          As to the sentence, your Honor, I think 324

18   months, if -- if we look at all of the enhancements, I

19   think that that sentence is severe and is significant

20   and does take into account all of the enhancements that

21   we have talked about and that's discussed in the

22   presentence.  The --

23          THE COURT:  My assessment of the victim here

24   was obviously she was a minor child, but she was also a

25   particularly vulnerable minor child, developmentally,

1  socially, someone who was, again, starved for

2  appropriate attention, suffered from significant

3  deficits.  I mean, that was apparent to me when she was

4  on the witness stand.

5           He says that isn't taken into account by the

6  guidelines.  Can you tell me where it's taken into

7  account?

8           MS. GRAHAM:  Yes.  I -- I do think that when

9  the -- when you look at the defendant unduly influenced

10  the minor victim to engage in prohibited sexual conduct,

11  that was incorporated into the underlying guideline

12  range.

13           And so the obstruction of justice was, the

14  undue -- unduly influencing the minor victim, the sex

15  act, all of those were incorporated where we got I

16  believe it was 34.

17           THE COURT:  Uh-huh.

18           MS. GRAHAM:  And that now we're bumped up to

19  37 because of the prior sex act or sex conviction.

20           So I do think that those have been

21  encompassed.

22           THE COURT:  All right.

23           So you -- when your turn comes to respond,

24  just respond to that.  Okay?

25           All right.  What else would you like to tell

1   me?

2                MS. GRAHAM:  I think that is the crux of the

3   argument, your Honor, is that we have calculated or the

4   guidelines have looked at each and every factor that the

5   Court views aggravating and we would ask the Court to

6   impose the 324-month sentence concurrent to whatever he

7   may get in New Hampshire or Vermont as a result of the

8   same conduct.

9                THE COURT:  All right.  Thank you.

10               Do you want to respond to her contention that

11   that factor is already sufficiently --

12               MR. AFRAME:  Just the factor that they are --

13   that her age is already taken into account, essentially.

14               THE COURT:  No, her special vulnerability.

15   It's not just her age.  It's my -- it's my assessment of

16   her that -- remind me of her exact age at the time of

17   the assault.  Was she 14?  I can't -- remind me of her

18   exact age.

19               MR. AFRAME:  So if we look at the --

20               THE COURT:  Just remind --

21               MR. AFRAME:  Sorry.

22               THE COURT:  -- me of her age at the time.

23               MR. AFRAME:  Oh, 14, and he's in his low 30s.

24               THE COURT:  Yeah.  And in my mind, she -- she

25   was far different from a typical 14-year-old in terms of

1    her vulnerability.

2         That's -- so it's not just the age that is

3    problematic.  It's that she has special vulnerabilities

4    that he exploited.

5         MR. AFRAME:  Right.  So I think we're talking

6    about 2G1.3(b)(2)(B), which says a participant otherwise

7    unduly influenced a minor to engage in prohibited sexual

8    conduct, increase by two levels.

9         And then if we go to the commentary, it says,

10   in a case in which a participant is at least ten years

11   older than the minor, it shall be a rebuttable

12   presumption that this section applies.

13        So the -- the focus of this I do think is on

14   age.  And what I would point out to the Court was in

15   addition to age, there were all sorts of other

16   vulnerabilities here -- hearing impairment, clear mental

17   impairment, dysfunctional family that was taken

18   advantage of --  that make this more than just about the

19   difference in their -- in their age.

20        THE COURT:  Am I misunderstanding the way the

21   4B1.5 enhancement works here so that it would apply

22   regardless of whether there was a two-point enhancement?

23        MR. AFRAME:  It would.  So I guess, to me,

24   that -- what I understood Ms. Graham said, but maybe I

25   misunderstood her, was that 4B1.5 makes it even higher

1    than what the original guideline range would have been.

2              THE COURT:  Right.  But if someone who's

3    eligible for a 4B1.5 guideline assaults a minor, they

4    turn out to have a 37 regardless of the particular

5    vulnerabilities --

6              MR. AFRAME:  Correct.

7              THE COURT:  -- of the victim.  That's the

8    point I'm trying to make.

9              MR. AFRAME:  Yeah.  So they got no points for

10   the vulnerability, if that's how you want to look at it.

11             THE COURT:  So it isn't really taken into

12   account.

13             MR. AFRAME:  Yes.  And I also think -- yes.

14   So that's probably the better argument and my secondary

15   argument is even under that guideline, it's not taken

16   into account the way it appeared in this case.

17             THE COURT:  Okay.  All right.  Thank you.

18             Ms. Graham, anything else you want to say

19   before I impose sentence?

20             MS. GRAHAM:  No, thank you.

21             THE COURT:  Mr. Carpentino, you have an

22   opportunity to speak.  You don't have to say anything.

23   I won't hold it against you if you don't.  If there is

24   anything you want to say, I'll be happy to hear it.  Did

25   you want to speak?

1          THE DEFENDANT:  No, not at this time, your

2     Honor.  Thank you.

3          THE COURT:  Okay.  Thank you.

4          Can you just state for the record what contact

5     you've had with the victim about this?

6          MR. AFRAME:  Yes.  So we've been in telephone

7     contact more than once with the victim's father.

8          THE COURT:  And have you -- do you have any

9     feedback --

10         MR. AFRAME:  We offered --

11         THE COURT:  -- that you want to report?

12         MR. AFRAME:  We offered the opportunity to

13    write a letter and it was told to us to expect a letter,

14    but then we did not receive a letter.

15         THE COURT:  Okay.  So you fulfilled your

16    obligation to consult and have nothing more to report.

17         MR. AFRAME:  I do not.

18         THE COURT:  Okay.  All right.

19         MR. AFRAME:  And we've explained what we

20    intended to argue here today.  The victim's fully

21    informed.

22         THE COURT:  Okay.  Thank you.

23         All right.  So we're talking a very lengthy

24    sentence, whatever I do here.  There's no question about

25    it.  I do think that the guidelines generally and

1  appropriately capture the seriousness of the offense

2  here and so my starting point is a midpoint range

3  sentence seems to be about right.  I -- I've ultimately

4  decided on a somewhat higher sentence, but not quite to

5  the level the government has suggested.

6          I'm going to impose a sentence of 384 months.

7  And my thinking is that I don't think the particular

8  ways in which the defendant exploited this family and

9  this young girl in particular are adequately captured by

10  the guideline range and warrant an aggravated sentence.

11          The particular incredibly short amount of time

12  that the defendant was out of prison for one sex-related

13  offense before he committed another suggests something

14  about his propensity to commit criminal acts of this

15  sort that suggest that individual deterrence is going to

16  be a difficult thing for this defendant to accomplish.

17          He had the benefit of sex offender treatment

18  while in prison and I -- I think we have a situation in

19  which it is very -- very difficult to predict his future

20  behavior.  But I do think that the closeness in time of

21  his reoffending for a similar kind of offense is an

22  aggravating factor in my mind and so I am going to

23  impose a sentence some -- somewhat above the midpoint;

24  not to the top of the range, not because I don't think

25  that this is a serious crime.  It just is horrendous and

1    heart-wrenching and tragic, the injury that this

2    defendant caused to the victim in this case.  But I'm

3    trying to sentence using the sentencing statute and the

4    guidelines and approach it in the way I believe is my

5    responsibility.

6              So in my judgment, a sentence of 384 months

7    is consistent with the requirements of the sentencing

8    statute and is, in fact, a just sentence and that's why

9    I'm going to impose it.

10             We need to talk about conditions of release

11   and we need to talk about the special assessment.

12             So let me hear -- Ms. Graham, you have some

13   objections to conditions of release.  Why don't you

14   state them, we'll hear what the government's response is

15   on those, and then we'll just do them one at a time and

16   then we'll turn to the issue of the special assessment.

17             MS. GRAHAM:  Yes, your Honor.

18             It was really in addition to special condition

19   number 2 regarding polygraph testing.  We'd just ask

20   that there be language added to include that if the

21   defendant refuses to answer a specific question during

22   the polygraph examination or in any other interview on

23   the grounds that it is incriminating, the probation

24   officer may not compel the defendant to answer that

25   question.  That's taken from the polygraph or sex

1   offender management from probation and supervised

2   release conditions.

3           And in speaking before the sentencing, it's my

4   understanding the government had no objection to that

5   language being included.

6           THE COURT:  You don't object?

7           MR. AFRAME:  I don't, following the --

8           THE COURT:  Do you have a problem with that?

9           THE PROBATION OFFICER:  No, your Honor.  I've

10  had similar language from another case.

11          THE COURT:  Okay.  So we'll include that

12  language in the conditions of release.

13          Are there other objections to conditions of

14  release that you're pressing?

15          MS. GRAHAM:  No, your Honor.

16          THE COURT:  All right.  So the special

17  assessment issue -- I agree that the defendant, at least

18  as presented at the trial, he does own real estate.  I

19  don't know to what extent that real estate has ongoing

20  value.

21          MR. AFRAME:  So here's the complexity.  And

22  I'm -- I guess I'm thinking this through, unfortunately,

23  right now.  But restitution -- we've filed a motion to

24  extend the restitution.  And let me explain why.

25          A complexity, I think, in this case that may

1  be impossible for us to overcome, you learned from the

2  trial that this victim suffered trauma from many people

3  in her -- well, at least two people in her life,

4  Mr. Carpentino and her mother.  She now lives in Alabama

5  with her father, separated from her mother.  Obviously

6  trauma is somewhat applied to the mother and we're

7  trying to get someone who could be able to talk about

8  distinguishing one trauma from the other, which is not

9  an easy thing to do.

10           THE COURT:  In terms of the restitution?

11           MR. AFRAME:  Because that's what would be at

12  stake is her mental health costs going out.

13           THE COURT:  All right.

14           MR. AFRAME:  And we're not in a position today

15  to see whether that's even possible to distinguish.

16           THE COURT:  Yeah.  Well, I -- again, I'm open

17  to hearing legal arguments about it, but I don't see why

18  that's an impediment to awarding restitution, if you

19  aren't able to segregate out precisely what percentage

20  of the need for treatment is attributable to the

21  defendant's criminal behavior versus some other aspects

22  of her life.

23           She clearly is going to need treatment as a

24  result of what the defendant did to her and so that part

25  of it, I don't -- isn't particularly problematic, but

1    what I'm wondering is -- I mean, we imposed a special

2    assessment based on his properties, but I really don't

3    know the extent to which they're encumbered, that they

4    can be reduced to cash.  I just don't know the answer to

5    that.  I mean, he did have them when he got out of --

6    out of jail the last time and he drew rental income --

7                 MR. AFRAME:  Right.

8                 THE COURT:  -- from at least one of them.

9                 MR. AFRAME:  So I don't want to -- I mean, so

10   what's concerning me in sort of advocating for the

11   victim is I don't want to diminish whatever money --

12                THE COURT:  Take it up with the special

13   assessment.

14                MR. AFRAME:  Correct.  So -- all right.  So is

15   there a statutory priority in restitution and special

16   assessment?  I agree with you.  I think what you're

17   saying is to the extent there's money available and it

18   can first satisfy the need for restitution, that would

19   be better than the special assessment, but I don't know

20   if there's a statutory priority as to how I allocate

21   those things.

22                MR. AFRAME:  Special assessments, I mean, are

23   due and payable immediately as opposed --

24                THE COURT:  Well, can we bifurcate the hearing

25   and defer the special assessment and restitution issues

1  to a joint analysis at a later point in the proceeding?

2  Am I able to do that, impose judgment, defer the special

3  assessment, until I make a determination about the

4  defendant's ability to pay in total after a more careful

5  analysis?

6          THE PROBATION OFFICER:  I'm not sure.  I know

7  you can defer the imposition of restitution up to 90

8  days per statute.  I'm not sure how it applies or if any

9  applies to the special assessment or the Justice for

10 Victims of Trafficking Act assessment.

11         THE COURT:  All right.  What does the

12 defendant want to say -- I'm sorry.  Is there something

13 else from you?

14         MR. AFRAME:  No, go ahead.  I'm thinking.

15         THE COURT:  Does the defendant want to -- do

16 you want to present anything on this, Ms. Graham?

17         MS. GRAHAM:  May I just have one moment?

18         THE COURT:  Yes.

19         THE PROBATION OFFICER:  I would like to point

20 out to the Court according to 18, 3014, which is the

21 Justice for Victims of Trafficking Act, if you were to

22 impose the $5,000 assessment, that needs to be paid

23 after all other court-ordered obligations are paid,

24 which would include restitution.

25         THE COURT:  Oh, okay.  So given that, I think

1  we should defer judgment about a -- well, I guess we can

2  say we can impose it and then say that we'll pay the

3  restitution first and only -- it'll only be collected if

4  there's no -- if there are assets after any restitution

5  hearing.

6           MR. AFRAME:  I would ask for that.

7           THE COURT:  All right.  So what do you want to

8  say in response?

9           MS. GRAHAM:  Your Honor, only that -- that in

10  looking at the PSR, I don't know the value of the house.

11  I mean, it appears that it's valued at 120,000.  I know

12  the two other properties were sold.  They were

13  encumbered.  So that's a big question mark for me,

14  really, what the value.

15           THE COURT:  But you don't have any evidence of

16  any encumbrances or tax liens, mortgages, things like

17  that?

18           MS. GRAHAM:  Correct.

19           THE COURT:  Okay.  All right.  Thank you.

20           All right.  I think there's sufficient

21  evidentiary basis to draw a conclusion that the

22  defendant, in fact, can pay the special assessment

23  amount of $5,000.  I will order it.  I'll defer

24  restitution until a later date.

25           When will the government be ready to proceed

1    on that?

2              MR. AFRAME:  You have 90 days by statute.

3    We'd ask for 90 days.

4              THE COURT:  All right.  So we'll defer it for

5    a period of 90 days and I've required the government to

6    submit further briefing on its position after consulting

7    with the victim's family.  All right?

8              Anything else I need to do before I announce

9    the sentence?

10             MR. AFRAME:  Not from the government.

11             THE COURT:  Okay.  I just want to say one

12   thing.

13             I don't want anyone to gather from this

14   presentation here by me, which I've tried deliberately

15   to be reasoned rather than emotional, that I don't

16   understand the harm that this has caused to the victim

17   here.  I think it's a tragic -- a tragic situation for

18   her.  I think she's been damaged horribly by the

19   defendant's conduct.  But I don't impose a sentence

20   based on emotion.  I base -- I impose it based on reason

21   and so that's why I've responded as I have here.

22             All right.  Let me read the proposed sentence.

23             Pursuant to the Sentencing Reform Act of 1984,

24   it is the judgment of the Court that the defendant, Kurt

25   Carpentino, is hereby committed to the custody of the

1  Bureau of Prisons to be imprisoned for a term of 384

2  months.

3          The Court recommends that the defendant

4  participate in a sex offender treatment program while

5  incarcerated, if eligible.

6          The Court calls to the attention of the

7  custodial authorities that the defendant has a history

8  of mental health issues and recommends that the

9  defendant be allowed to participate in any available

10  mental health treatment programs while incarcerated.

11          It is recommended to the Bureau of Prisons

12  that the defendant participate in the intensive drug

13  education and treatment program.

14          Upon release from imprisonment, the defendant

15  shall be placed on supervised release for a term of

16  life.  While on supervised release, the defendant must

17  comply with the standard conditions that have been

18  adopted by this Court and shall comply with the

19  mandatory and proposed conditions and special conditions

20  attached to the presentence report as modified by the

21  defendant as proposed.

22          It is ordered that the defendant shall pay a

23  special assessment of -- $5,000 is the special

24  assessment.  Do you agree with that?

25          THE PROBATION OFFICER:  Justice for Victims

1  Trafficking Act assessment.  There's a special

2  assessment of $100.

3         THE COURT:  On top of that?

4         THE PROBATION OFFICER:  Yes.

5         THE COURT:  So it has to be separate.  Okay.

6  It would be $5,100?

7         THE PROBATION OFFICER:  Correct.  There's two

8  different assessments, your Honor.

9         THE COURT:  Okay.  All right.  So the

10  defendant shall be -- have a special assessment of --

11  the special assessment for Victims Act of $5,000 and the

12  ordinary special assessment of $100 shall be due in full

13  immediately.

14         The Court finds that the -- the defendant does

15  not have the ability to pay a fine.  The Court will

16  waive the fine in this case.

17         The Court will determine the issue of

18  restitution within the next 90 days after a submission

19  by the government which -- and the defendant, which

20  shall be made no later than 90 days.  I'll hold a

21  subsequent hearing on it.

22         If -- I don't know whether your client will

23  want to attend that or not.  If he wants to waive his

24  right to attend -- I don't know where he'll be, but if

25  he wants to be here, we can bring him here.  If he

1  doesn't want to be here, you can waive that if you want.

2           Okay.  The defendant is remanded to the United

3  States Marshal.

4           Are there any objections to this sentence

5  other than those previously raised?

6           MS. GRAHAM:  No, your Honor.

7           THE COURT:  I'll impose the sentence as I've

8  read it.

9           You have a right to appeal.  You have to file

10 a notice of appeal within 14 days in order to preserve

11 your right to appeal.  You can ask your attorneys to

12 file it for you, and I assume they will do that in this

13 case since you went to trial, but if you prefer, you

14 could ask the clerk's office for help and they can help

15 you in putting it together and you could file it.  But

16 it does have to be filed within 14 days or you lose your

17 right to appeal.

18          MR. AFRAME:  Did you -- just before you end,

19 did you notify him of the special -- supervised release

20 conditions or how are we --

21          THE COURT:  Yes, I did -- what I do now is I

22 read them in reference to as imposed -- as suggested in

23 the report.

24          MR. AFRAME:  Okay.  And we made the change

25 that he wanted?

1          THE COURT:  As changed by -- by -- at the

2     request of the defendant.

3          MR. AFRAME:  Okay.

4          THE COURT:  So the polygraph condition is

5     changed.  The other conditions are imposed as set forth

6     in the report.

7          I did that, didn't I?

8          THE PROBATION OFFICER:  Yes, your Honor.

9          THE COURT:  I -- I always want people to

10     remind me because when you do thousands of these things,

11     there's a tendency to have -- you might inadvertently

12     miss something.  So I'm always happy to --

13          MR. AFRAME:  I'm sorry.  That's a change in

14     our practice.  We used to read along.

15          THE COURT:  Right.  And now I don't read them

16     because we've incorporated them into a document that the

17     defendant is required to review before sentencing.

18          MR. AFRAME:  Yes.

19          THE COURT:  All right.  That concludes this

20     hearing.

21          (Proceedings concluded at 11:03 a.m.)

22

23

24

25

```
                    C E R T I F I C A T E


        I, Liza W. Dubois, do hereby certify that

the foregoing transcript is a true and accurate

transcription of the within proceedings, to the best of

my knowledge, skill, ability and belief.



Submitted: 11/9/18
```

Liza Dubois, RMR, CRR
Licensed Court Reporter No. 104
State of New Hampshire